**HUNTER PYLE, SBN 191125**
**KATHERINE FIESTER, SBN 301316**
**JOHN J. DARIN, SBN 323730**
HUNTER PYLE LAW
428 13th Street, 11th Floor
Oakland, CA  94612
Telephone: (510) 444-4400
Facsimile: (510) 444-4410
Emails: hunter@hunterpylelaw.com
         kfiester@hunterpylelaw.com
         jdarin@hunterpylelaw.com

**TODD F. JACKSON, SBN 202598**
**GENEVIEVE CASEY, SBN 264928**
FEINBERG, JACKSON, WORTHMAN & WASOW LLP
2030 Addison Street, Ste. 500
Berkeley, CA 94704
Telephone: (510) 269-7998
Facsimile: (510) 269-7994
Emails: todd@feinbergjackson.com
         genevieve@feinbergjackson.com

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| COORDINATION PROCEEDING SPECIAL TITLE (Rule 3.550) | Case No. 2:20-cv-10286 GW SKx |
| | **PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO REMAND** |
| FIRST STUDENT, INC. CASES | |
| | **DATE:**      **January 7, 2021** |
| | **TIME:**      **8:30 AM** |
| | **JUDGE:**    **Hon. George H. Wu** |

## TABLE OF CONTENTS

I.      Introduction ................................................................................................................1

II.     Procedural History ....................................................................................................3

III.    Plaintiffs' ICRAA Claims .........................................................................................5

IV.     Legal Argument ........................................................................................................6

        A.  First Cannot Prove That the $75,000 Amount In Controversy Requirement Is Met for Any Plaintiff. ..................................................................................8

            1.  Plaintiffs have stipulated that no Plaintiff seeks more than $75,000 in this action. ...........................................................................................9

            2.  Plaintiffs' settlement communication does not negate their stipulation, and Plaintiffs have disavowed any reading to the contrary. ...........................10

            3.  The Court does not have jurisdiction over any Plaintiff whose claims do not exceed $75,000. ..............................................................................12

        B.  First's Removal Is Untimely. ....................................................................13

            1.  First could have ascertained from Plaintiffs' discovery responses that this action was removable as early as 2011. ......................................14

            2.  First's removal is also untimely because First could have ascertained no later than June 2020 that, if Plaintiffs' stipulation to cap their claims at $75,000 were disregarded, some Plaintiffs' claims would exceed $75,000. ............15

            3.  First's untimely removal is an act of abusive gamesmanship ...............16

        C.  This case is not a "mass action" under CAFA. ..........................................16

            1.  The claims in the action arise from an event in California and resulted in injuries in California ..............................................................................17

            2.  The claims were joined upon motions filed by Defendants First and HireRight. ......................................................................................17

        D.  CAFA Jurisdiction Also Fails Because the Local Controversy Exception Applies .............18

            1.  More than two-thirds of all Plaintiffs are California citizens. ...............19

            2.  HireRight, Inc. is a California citizen and a defendant from which significant relief is sought within the terms of the local controversy exception. ...............20

i

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO REMAND

a.    Plaintiffs seek significant relief from HireRight Inc. and HireRight Inc.'s alleged conduct forms a significant basis for the Plaintiffs' claims. ...............................................................................................20

b.    HireRight Inc. is a citizen of California. ..........................................................20

3.    The principal injuries resulting from Defendants' misconduct were incurred in California ...............................................................................................21

4.    No other class action has been filed against Defendants asserting similar factual allegations in the three years preceding this action ...................................................21

V.    Conclusion ...............................................................................................22

ii

# TABLE OF AUTHORITIES

**CASES**

*Abrego Abrego v. The Dow Chemical Co.*
  443 F.3d 676 (9th Cir. 2006) ....................................................................................1, 6, 8, 12

*Benko v. Quality Loan Service Corp.*
  789 F.3d 1111 (9th Cir. 2015) ..............................................................................................19

*Bridewell-Sledge v. Blue Cross of California*
  798 F.3d 923 (9th Cir. 2015) ................................................................................................21

*Briggs v. Merck Sharp & Dohme*
  796 F.3d 1038 (9th Cir. 2015) ..............................................................................................18

*Brown v. Citibank USA, N.A.*
  2014 WL 5810333 (C.D. Cal. Nov. 7, 2014).........................................................................9

*Cadenas v. Union Pac. R.R.*
  2010 WL 890046 (W.D. Wash. Mar. 9, 2010) .....................................................................12

Caterpillar Inc. v. Williams
  482 U.S. 386 (1987).............................................................................................................6, 8

*Chase v. Shop 'N Save Warehouse Foods, Inc.*
  110 F.3d 424 (7th Cir. 1997) ................................................................................................11

*Cohn v. Petsmart, Inc.*
  281 F.3d 837 (9th Cir. 2002) ...........................................................................................11, 12

*Coleman v. Estes Exp. Lines, Inc.*
  631 F.3d 1010 (9th Cir. 2011) ..............................................................................................20

*Corber v. Xanodyne Pharmaceuticals, Inc.*
  771 F.3d 1218 (9th Cir. 2014) ..............................................................................................16

*Friedman v. Bally Total Fitness Holding Corp.*
  2012 WL 8453558 (C.D. Cal., Sept. 25, 2012) ...................................................................12

*Graybill v. Khudaverdian*
  2015 WL 7295378 (C.D. Cal. Nov. 17, 2015)......................................................................12

*Hertz Corp. v. Friend*
  559 U.S. 77 (2010)................................................................................................................20

Holmes Group, Inc. v. Vornado Air Circulation Sys., Inc.
  535 U.S. 826 (2002)............................................................................................................6, 8

iii

*Kanter v. Warner-Lambert Co.*
265 F.3d 853 (9th Cir. 2001) ..................................................................................19

*Kim v. Joseph (UK) Inc.*
2018 WL 1311453 (C.D. Cal., Mar. 12, 2018) ........................................................11

Kokkonen v. Guardian Life Ins. Co. of Am.,
511 U.S. 375 (1994)..................................................................................................6

*Leon v. Gordon Trucking, Inc.*
(C.D. Cal. 2014) 76 F.Supp.3d 1055 ......................................................................11

*Martinez v. Epic Games, Inc.*
2020 WL 1164951 (C.D. Cal., Mar. 10, 2020)..........................................................9

*Mondragon v. Capital One Auto Finance*
736 F.3d 880 (9th Cir. 2013) ...................................................................................19

*Rios v. Wirepath Home Sys., LLC*
2019 WL 6715044 (C.D. Cal. Dec. 10, 2019) ......................................................9, 12

*Rodriguez v. Swissport USA, Inc.*
2015 WL 4977187 (C.D. Cal., Aug. 20, 2015)........................................................1, 16

Roth v. CHA Hollywood Med. Ctr., L.P.
720 F.3d 1121 (9th Cir. 2013) ...............................................................................1, 16

*St. Paul Mercury Indemnity Co. v. Red Cab Co.*
303 U.S. 283 (1938)...................................................................................................9

*Standard Fire Ins. Co. v. Knowles*
568 U.S. 588 (2013)...................................................................................................9

*Steiner v. Horizon Moving Systems Inc.*
568 F.Supp.2d 1084 (C.D. Cal. 2008) .....................................................................15

*Tanoh v. Dow Chemical Co.*
561 F.3d 945 (9th Cir. 2009) ...............................................................................16, 18

*Uppal v. Electronic Data Systems*
316 F.Supp.2d 531 (E.D. Mich. 2004)......................................................................7

Valles v. Ivy Hill Corp.
410 F.3d 1071 (9th Cir. 2005) ...............................................................................6, 8

*Vitale v. Celadon Trucking Services, Inc.*
2017 WL 626356 (C.D. Cal., Feb. 15, 2017)............................................................12

iv

**STATUTES**

California Code of Civil Procedure
Section 1786...........................................................................................................................3
Section 1786.12................................................................................................................3, 5
Section 1786.16................................................................................................................3, 5
Section 1786.50..............................................................................................................5, 15

**OTHER AUTHORITIES**

28 U.S. Code
Section 1332.................................................................................................................. passim
Section 1446...........................................................................................................2, 7, 13, 15
Section 1447.........................................................................................................................6

Senate Report No. 109-14 (2005) ........................................................................................12

v

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO REMAND**

Plaintiffs submit the following memorandum of points and authorities in support of their motion to remand this action to state court.[1]

## I.  INTRODUCTION

This action involves 24 coordinated non-class action cases brought under California background check law. Defendants First Student, Inc. and First Transit, Inc. (collectively, "First") now seek to remove this case after choosing to litigate in state court for more than 11 years. First's removal, which is both legally untenable and untimely, is an apparent attempt to avoid a pending adverse tentative ruling that would eviscerate its defenses. Plaintiffs respectfully submit that the Court should not permit such abusive gamesmanship. *See Roth v. CHA Hollywood Med. Ctr., L.P.*, 720 F.3d 1121, 1126 (9th Cir. 2013); *Rodriguez v. Swissport USA, Inc.*, No. CV 15-3951-GW, 2015 WL 4977187, at *2 (C.D. Cal., Aug. 20, 2015).

First has no valid grounds for removal. A defendant seeking to remove a "mass action" under the Class Action Fairness Act ("CAFA") must prove both that the amount in controversy exceeds $5,000,000 in the aggregate and that the individual plaintiffs' claims are for amounts greater than $75,000. 28 U.S.C. § 1332(d)(2); *Abrego Abrego v. The Dow Chemical Co.*, 443 F.3d 676, 679-81 (9th Cir. 2006).

First cannot meet this burden because, since 2013, Plaintiffs have limited their claims to a maximum of $75,000 in the operative pleadings. *See* Plaintiffs' Consolidated Fourth Amended Complaint ("CFAC") (Pyle Decl., Exh. B), filed in Los Angeles Superior Court on April 23, 2013, at ¶¶ 109-10, 114. Each Plaintiff's claim remains capped at $75,000. Plaintiffs confirmed that fact as recently as November 25, 2020. *See* Disavowal Letter (Pyle Decl., Exh. A) at 1. The $75,000 limit alone establishes that the Court must remand this action pursuant to 28 U.S.C. section 1332(d)(11)(B)(i).

Should the Court continue its analysis, it is clear that First's removal is not timely. That is because First did not remove within 30 days of receiving a document from which it could have

---

[1] Pursuant to Local Rule 7-3, on November 25, 2020, Plaintiffs' counsel contacted First's counsel and asked to meet and confer regarding the substance of this motion and any potential resolution. As of the date this motion is filed, First's counsel has not responded to Plaintiffs' counsel's letter. *See* Plaintiffs' Disavowal Letter of November 25, 2020 ("Disavowal Letter") (Declaration of Hunter Pyle in Support of Plaintiffs' Motion to Remand ("Pyle Decl."), ¶3, Exh. A).

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO REMAND

ascertained that the action was potentially removable. 28 U.S.C. § 1446(b)(1), (3). Regarding CAFA's $5 million aggregate jurisdictional threshold.[2] First has known that the Plaintiffs' aggregate claims total more than $5 million since December 30, 2010, when Plaintiffs filed their Consolidated First Amended Complaint.

Regarding CAFA's "mass action" requirement that one or more Plaintiffs have claims greater than $75,000,[3] seven Plaintiffs provided discovery responses in 2011 that put First on notice that they were seeking more than $75,000 in economic damages. Plaintiffs did not cap their damages until April 2013. Therefore, if First had wished to remove this action under CAFA, it was required to do so within 30 days of receiving those discovery responses. Removal now is thus untimely by almost a decade.

First's removal is untimely for yet another reason. While the removal papers are not clear, First appears to suggest that the Court should ignore Plaintiffs' explicit $75,000 cap in the operative pleading should be ignored. As noted herein, the Court should not do so.

Moreover, First appears to argue that the action is removable because some Plaintiffs have claims potentially worth more than $75,000 based upon the sheer number of background checks that First had run on them. But First has had notice that the maximum hypothetical value (were the $75,000 limit ignored) of some Plaintiffs' claims exceeds $75,000 since at least June 2020, when First's co-defendant provided the number of background checks run on each Plaintiff. Absent the cap on damages, that data and simple math revealed that some Plaintiffs would have claims above $75,000. Therefore, even if Plaintiffs' cap on the value of their claims is ignored, removal is untimely because First could have made the same arguments they make now since at least June 2020.

First's removal also suffers from several other defects. In addition to the fact that Plaintiffs' claims do not meet the amount in controversy threshold, First's attempt to remove based on CAFA jurisdiction also fails because this action is not a "mass action" as defined by that statute. 28 U.S.C. § 1332(d)(11)(B)(ii). Furthermore, even if it were, the local controversy exception would require remand. 28 U.S.C. § 1332(d)(4)(A).

For each of these reasons, as set forth more fully below, the Court must remand this action.

---

[2] *See* 28 U.S.C. § 1332(d).
[3] *See* 28 U.S.C. § 1332(d)(11)(B)(1).

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO REMAND**

## II.    PROCEDURAL HISTORY

Between 2009 and 2011, Plaintiffs filed 24 separate cases against First and Defendants HireRight, Inc. and HireRight Solutions, Inc. (collectively "HireRight").[4] Each case names fewer than 100 plaintiffs. None is a class action. *See* Pyle Decl. at ¶ 6.

The 24 cases name a total of approximately 1,397 Plaintiffs. 102 of these Plaintiffs were dismissed from the case in 2013, leaving 1,293 active Plaintiffs at this time. *See* Pyle Decl. at ¶ 7.

Plaintiffs' claims all arise from a series of illegal background checks that First obtained on tens of thousands of its employees. Prior to doing so, First failed to give proper notice or to get written authorizations to run the checks. *See* Pyle Decl. at ¶ 8. First's conduct thus violated the clear requirements of California's Investigative Consumer Reporting Agencies Act, Cal. Civil Code section 1786, *et seq*. ("ICRAA").

Defendant HireRight, a background check agency, ran the tens of thousands of background checks that First requested. However, HireRight failed to comply with ICRAA's requirement that it receive certifications from First that the background checks were properly disclosed before it ran those checks. *See* Pyle Decl. at ¶ 9. It therefore violated a separate section of ICRAA that sets forth certain obligations for agencies like HireRight. Cal. Civ. Code §§ 1786.12 (e), 1786.16(a)(4).

First and HireRight moved to coordinate the 24 separate cases. That motion was granted, and the cases were coordinated in the Los Angeles County Superior Court. The coordinated action is entitled *First Student, Inc. Cases*, JCCP 4624. *See* Pyle Decl. at ¶ 10.

On April 23, 2013, Plaintiffs filed a Consolidated Fourth Amended Complaint ("CFAC"). *See* Pyle Decl., Exh. B. In that document, Plaintiffs stipulated for the first time that no Plaintiff sought more than $75,000 in the action. *See* Pyle Decl. at ¶ 11; CFAC (Pyle Decl., Exh. B) at ¶¶ 109-110, 114.

During the 11 years that this case was litigated in state court, Defendants propounded multiple rounds of individualized discovery on all Plaintiffs. Defendants also filed multiple motions, including dispositive motions.[5] Defendants' motions (and subsequent appeals) were heard and decided by the Los

---

[4] HireRight has not joined First's removal.

[5] Defendants' motions have included a demurrer, a motion to strike, a motion for summary adjudication, and various motions regarding the critical legal issues in the case. *See* Pyle Decl. at ¶ 12.

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO REMAND**

Angeles County Superior Court, the Second District Court of Appeal, and the California Supreme Court. *See* Pyle Decl. at ¶ 12.

In early 2019, after Plaintiffs defeated First's motion for summary judgment at the California Supreme Court,[6] the case was remanded to the Los Angeles County Superior Court. The parties have continued to vigorously litigate this action since that time. Plaintiffs have prevailed on all substantive issues that the Superior Court has decided since remand.[7] *See* Pyle Decl. at ¶ 13.

On October 2, 2020, after full briefing, the Superior Court issued a tentative ruling regarding five issues that are critical to the resolution of Plaintiffs' claims. *See* Pyle Decl. at ¶ 14. That tentative ruling was in Plaintiffs' favor on all issues. *See* JCCP Tentative Ruling of October 2, 2020 (Pyle Decl., Exh. D).[8] After receiving it, Defendants requested a continuance of the hearing on those issues. *See* Pyle Decl. at ¶ 15.

Days before the rescheduled hearing, with the tentative ruling pending and still in Plaintiffs' favor, First removed the 24 coordinated cases to federal court. *See* Pyle Decl. at ¶ 16.

---

[6] *Connor v. First Student*, 5 Cal. 5th 126 (2018).

[7] For example, on February 5, 2020, the Superior Court held (1) that Plaintiffs are not required to prove actual damages in order to recover ICRAA's statutory award of $10,000 or punitive damages; (2) that Plaintiffs are entitled to recover $10,000 per unlawful report from each group of Defendants (i.e., $10,000 from First and $10,000 from HireRight); (3) that ICRAA's statutory award is not an "excessive fine"; (4) that the court could not exercise equitable discretion to reduce ICRAA's statutory award to less than $10,000; and (5) that certain checks mailed by First to some Plaintiffs in June 2019 did not release First from liability in this action. *See First Student, Inc. Cases*, JCCP 4624, Court's Final Ruling and Order Re: Statutory Interpretation (Feb. 5, 2020) ("Feb. 2020 Order") (Pyle Decl., Exh. C). Similarly, on March 12, 2020, the Superior Court denied Defendants' motion to enforce settlements with 65 of the Plaintiffs.

[8] The Superior Court's October 2, 2020 tentative ruling addressed five issues: (1) whether certain Plaintiffs are "consumers" protected by ICRAA; (2) whether certain types of background checks run by HireRight at First's behest are subject to ICRAA; (3) whether various "certifications" made by First since October 2007 complied with ICRAA; (4) whether disclosures made to Plaintiffs before First ran background checks were sufficient under ICRAA; (5) whether claims based on later background checks relate back to the initial filing date of this action. *See* JCCP Tentative Ruling of October 2, 2020 (Pyle Decl., Exh. D).

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO REMAND**

## III.    PLAINTIFFS' ICRAA CLAIMS

To the extent that it may help to understand the flaws in First's asserted basis for removal, Plaintiffs briefly summarize the relevant provisions of ICRAA, the California statute that is the basis for their claims.

The Legislature enacted ICRAA to protect the rights of California employees and others to fairness and accuracy with regard to background checks. Cal. Civ. Code § 1786.16 (b). Because background checks are both common and potentially disastrous for employees, ICRAA requires an employer like First to take two simple steps before it can run them. First, the employer must disclose, in a document consisting solely of that disclosure, certain specified information including that it will conduct a background check. Cal. Civ. Code § 1786.16 (a)(2)(B). Second, the employer must obtain the employee's written authorization before running the check. Cal. Civ. Code § 1786.16(a)(2)(C).

ICRAA further provides that before a background check agency like HireRight can prepare a background check for an employer, it must obtain a certification that the employer has made the required disclosures. Cal. Civ. Code §§ 1786.12 (e), 1786.16(a)(4).

Entities that fail to comply with "any requirement" of ICRAA are liable to the individuals who are the subject of an unlawful background check for "any actual damages sustained by the consumer as a result of the failure, or, except in the case of class actions, ten thousand dollars ($10,000), whichever sum is greater." Cal. Civ. Code § 1786.50(a)(1). Defendants found liable for ICRAA violations must also pay plaintiffs' attorneys' fees and costs. Cal. Civ. Code §§ 1786.50(a)(2), 1786.50(b). Punitive damages may also be awarded under ICRAA if a court finds that a defendant's actions were grossly negligent or willful. Cal. Civ. Code §§ 1786.50(a)(2), 1786.50(b).

Nearly all Plaintiffs in these cases are seeking the statutory award of $10,000 per ICRAA violation, rather than the actual damages they sustained due to Defendants' actions. Every Plaintiff, whether seeking the $10,000 statutory award or actual damages, has, since April 23, 2013, stipulated that they are limiting the total amount of recovery they seek (inclusive of fees, costs, punitive damages, etc.) to no more than $75,000. *See* CFAC (Pyle Decl., Exh. B) at ¶¶ 109-110, 114.

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO REMAND**

## IV.    LEGAL ARGUMENT

Federal courts are courts of limited jurisdiction, having subject-matter jurisdiction only over matters authorized by the Constitution and Congress. *See, e.g., Kokkonen v. Guardian Life Ins. Co. of Am.,* 511 U.S. 375, 377 (1994). A removed action must be remanded to state court if the federal court lacks subject-matter jurisdiction. 28 U.S.C. § 1447(c).

The Class Action Fairness Act ("CAFA") gives the federal courts jurisdiction over certain class actions and "mass actions" as defined in the statute. *See* 28 U.S.C. § 1332(d).  In a non-class action case such as this, a defendant must remove within 30 days of first learning that the amount in controversy exceeds $5,000,000 in the aggregate and that at least one plaintiff seeks more than $75,000. 28 U.S.C. § 1332(d)(2), (11). Because CAFA jurisdiction in a "mass action" extends only to plaintiffs whose claims satisfy the $75,000 amount-in-controversy requirements, plaintiffs who seek $75,000 or less must be remanded. 28 U.S.C. § 1332(d)(11)(B)(i); *Abrego Abrego v. The Dow Chemical Co.*, 443 F.3d 676, 689-90 (9th Cir. 2006). The removing party bears the burden of establishing jurisdiction. *Abrego Abrego*, 443 F.3d at 678.

Here, Plaintiffs have stipulated since April 2013 in the operative CFAC that no Plaintiff is seeking more than $75,000 in this action. *See* Pyle Decl. at ¶ 17. It is well-settled that a plaintiff is the "master of her complaint" and can plead to avoid federal jurisdiction. *See, e.g., Holmes Group, Inc. v. Vornado Air Circulation Sys., Inc.,* 535 U.S. 826, 831 (2002); *Caterpillar Inc. v. Williams,* 482 U.S. 386, 398–99 (1987); *Valles v. Ivy Hill Corp.,* 410 F.3d 1071, 1075 (9th Cir. 2005). Plaintiffs' recent settlement communication did not change the limitation in the CFAC, and Plaintiffs have disavowed any reading to the contrary. *See* Pyle Decl. at ¶¶ 19-23. Plaintiffs' stipulated limit on the damages they seek should therefore end the inquiry as to whether the action was properly removed under CAFA. On that basis alone, the Court should remand.

There are several additional reasons that independently mandate remand. For example, if the Plaintiffs' stipulation capping the value of their claims is disregarded, as First now urges the Court to do, removal is untimely. First has known since 2010 that the amount in controversy is more than $5 million.

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO REMAND**

*See* Pyle Decl. at ¶ 25. In addition, First's removal was filed more than 30 days after First could have ascertained that some Plaintiffs have more than $75,000 in potential damages. *See* Pyle Decl. at ¶ 26.

Specifically, First knew from discovery responses in 2011, prior to the $75,000 limitation in the pleadings, that at least seven Plaintiffs alleged damages exceeding $75,000. *See* Pyle Decl. at ¶ 26. First's window to remove based on CAFA thus closed 30 days after receiving those discovery responses. *See* 28 U.S.C. § 1446(b)(3). For these reasons, First's deadline to remove was in 2011, rendering the removal in late 2020 untimely by almost a decade. Having known it could remove then, First cannot reset the clock years later.

First's removal is also untimely because First could have determined six months ago that some Plaintiffs would have potential damages of more than $75,000 if the $75,000 cap on their claims were ignored.[9] In June 2020, HireRight produced data showing the number of background checks run on most Plaintiffs.[10] *See* Pyle Decl. at ¶ 30. Simple analysis of this data establishes that many Plaintiffs would have potential claims exceeding $75,000 if they had not limited their claims to avoid federal jurisdiction. But First did not remove these cases at that time. Instead, it waited until months later to remove, after the Superior Court had issued a tentative ruling against Defendants, apparently in hopes of preventing the tentative ruling from being entered. *See* Pyle Decl. at ¶ 18.

These cases also do not satisfy several other requirements of CAFA jurisdiction,[11] as set forth below. Accordingly, Plaintiffs request that the Court remand this action.

---

[9] As will be noted throughout this brief, at no time since the stipulated $75,000 cap was pled in the CFAC has the cap been altered, removed, or lifted. While Plaintiffs argue, in an abundance of caution, the alternative reasons for why remand is required, the cap remains and that cap is a sufficient basis, alone, for remand.

[10] HireRight has since produced updated spreadsheets reflecting the number of background checks run on all Plaintiffs through November 20, 2020. As further discussed herein, however, while some Plaintiffs had many background checks run on them, each Plaintiff has limited their claim to $75,000. Thus the background check data produced in June 2020, and any updated version of that data, does not justify removal.

[11] First does not appear to argue that these cases are removable based on traditional diversity jurisdiction. First has thus waived any right it may have had to remove based on traditional diversity jurisdiction. *See* 28 U.S.C. § 1446(b); *Uppal v. Electronic Data Systems*, 316 F.Supp.2d 531, 536 (E.D. Mich. 2004) (finding that employer waived its right to assert diversity jurisdiction as alternative basis for removal through its failure within thirty days from service to take some affirmative action in that

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO REMAND**

### A.    First Cannot Prove That the $75,000 Amount In Controversy Requirement Is Met for Any Plaintiff.

When a defendant pursues removal under CAFA's "mass action" provisions, it must establish both that the plaintiffs' claims in the aggregate exceed $5,000,000, and that the individual plaintiffs' claims are for amounts greater than $75,000. *See* 28 U.S.C. §§ 1332(d), 1332(d)(11)(B)(1); *Abrego Abrego*, 443 F.3d at 688-90. Any plaintiffs with claims below that amount must be remanded.[12] 28 U.S.C. § 1332(a), (d)(11)(B)(i); *Abrego* Abrego, 443 F.3d at 685.

Here, Plaintiffs have stipulated since April 2013 in the operative CFAC that no Plaintiff is seeking more than $75,000 in this action. *See* Pyle Decl. at ¶ 17. Plaintiffs have a well-established right to plead to avoid federal jurisdiction in this way. *See, e.g., Holmes Group,* 535 U.S. at 831; Caterpillar *Inc.,* 482 U.S. at 398–99; *Valles,* 410 F.3d at 1075. Plaintiffs' stipulation should therefore end the inquiry as to whether First can meet its burden of proving that any Plaintiff seeks more than $75,000. Because First cannot meet that burden, this Court must remand.

Furthermore, Plaintiffs dispute and have disavowed First's reading of the settlement communication that First relies upon in its removal papers. *See* Pyle Decl. at ¶¶ 19-23; *cf.* Declaration of Ron Peters in Support of Defendants' Notice of Removal of Civil Action to Federal Court, ¶ 2. The settlement communication does not change or modify Plaintiffs' stipulation in any way. Rather, it included a proposal to attempt to settle the claims against First for a total amount well under $75,000 per Plaintiff. *See* Disavowal Letter (Pyle Decl., Exh. A).

---

regard). Accordingly, Plaintiffs will not address the requirements of traditional diversity jurisdiction at length, but will note that First would be unable to establish traditional diversity jurisdiction for a number of reasons, including that the Plaintiffs' claims are under the amount in controversy threshold; there is not complete diversity among the Parties; and HireRight has not joined the removal petition. Moreover, removal on this basis would be untimely. Plaintiffs reserve the right to further address traditional diversity jurisdiction if First argues that it is a separate basis for removal.

[12] It is an open question in the Ninth Circuit as to whether, in order to justify removal of a "mass action," a removing defendant must show that each plaintiff meets the amount in controversy requirement, or whether a showing that one plaintiff meets that requirement is sufficient. *See Abrego Abrego*, 443 F.3d at 687. In this action, however, as in *Abrego Abrego*, remand of this entire action is required because First cannot show that even one Plaintiff meets the amount in controversy requirement.

**8**

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO REMAND**

Finally, upon review of First's removal papers, Plaintiffs immediately reiterated these facts to First, and explicitly disavowed any reading of the settlement communication to the contrary. *See* Disavowal Letter (Pyle Decl., Exh. A). Thus, the settlement communication is of no consequence.

**1.      Plaintiffs have stipulated that no Plaintiff seeks more than $75,000 in this action.**

Plaintiffs have stipulated since the filing of the operative CFAC that no Plaintiff seeks more than $75,000 in this action. *See* Pyle Decl. at ¶ 17. That stipulation should end the inquiry as to whether First can prove the requisite amount in controversy. Because each Plaintiff's demand is limited to $75,000, the action must be remanded. 28 U.S.C. § 1332(d)(11)(B)(i).

It is well settled that "[f]ederal courts permit individual plaintiffs, who are the masters of their complaints, to avoid removal to federal court, and to obtain a remand to state court, by stipulating to amounts at issue that fall below the federal jurisdictional requirement." *Standard Fire Ins. Co. v. Knowles* 568 U.S. 588, 595–596 (2013) (citing *St. Paul Mercury Indemnity Co. v. Red Cab Co.,* 303 U.S. 283, 294 (1938) ("If [a plaintiff] does not desire to try his case in the federal court he may resort to the expedient of suing for less than the jurisdictional amount, and though he would be justly entitled to more, the defendant cannot remove")). This Court has consistently recognized that "longstanding rule." *See, e.g., Martinez v. Epic Games, Inc.*, No. cv 19-10878-CJC(PJWx), 2020 WL 1164951, at *2–3 (C.D. Cal., Mar. 10, 2020); *Rios v. Wirepath Home Sys., LLC*, No. 8:19-cv-01921-JLS-KES, 2019 WL 6715044, at *2 (C.D. Cal. Dec. 10, 2019); *Brown v. Citibank USA, N.A.*, No. 2:14-cv-07695-CAS-VBK, 2014 WL 5810333, at *3 (C.D. Cal. Nov. 7, 2014).

Here, Plaintiffs have stipulated in the operative complaint that the relief they seek is capped at $75,000. *See* Pyle Decl. at ¶ 17. Specifically, the CFAC, which was filed in April 2013 and remains the operative pleading, stipulates that no Plaintiff's claim for relief shall exceed $75,000, as follows:

> 109.    Plaintiffs hereby stipulate that no Plaintiff's claim for relief shall exceed $75,000 including actual damages, statutory damages, punitive damages, interest, pro rata shares of attorneys' fees, pro rata shares of costs, and any form of equitable relief.

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO REMAND**

110.    Each Plaintiff hereby requests relief as follows but not exceeding $75,000 including actual damages, statutory damages, punitive damages, interest, pro rata shares of attorneys' fees, pro rata shares of costs, and any form of equitable relief:

*See also* CFAC (Pyle Decl., Exh. B) at ¶ 114.

Under the statutes and caselaw set forth above, that stipulation should end the inquiry and result in immediate remand.

### 2.    Plaintiffs' settlement communication does not negate their stipulation, and Plaintiffs have disavowed any reading to the contrary.

First's removal papers appear to rely upon a settlement communication sent by Plaintiffs on October 15, 2020.[13] *See* Defendants' Notice of Removal at ¶ 11. That settlement communication proposes to resolve the claims of 876 Plaintiffs for a total of $35,000,000, or approximately $39,900 per Plaintiff if the total were divided evenly.[14] In doing so, Plaintiffs compared the proposed amount to a much higher hypothetical aggregate exposure First would face if found liable and required to pay statutory damages of $10,000 for each background check shown in the data. That is, Plaintiffs pointed out the mathematical fact that multiplying $10,000 by the number of known background checks results in approximately $140,000,000.

However, that settlement communication is not relevant to the amount in controversy here because it does not allege that any individual Plaintiff is seeking more than $75,000. *See* Pyle Decl. at ¶ 20. Nothing in the settlement communication says or implies that the Plaintiffs intend to change the 2013 complaint and stipulation to seek no more than $75,000. In addition, Plaintiffs' counsel have

---

[13] First did not include the October 15, 2020 settlement communication in its Compendium of Documents in Support of Notice of Removal. Plaintiffs contend that the settlement communication is not relevant in light of their explicit disavowal of the portion that First purports to rely upon. Furthermore, it is a privileged and confidential settlement communication. Should the Court wish to review the settlement communication, Plaintiffs will file it under seal.

[14] Plaintiffs' settlement communication merely points out the mathematical fact that multiplying $10,000 by the number of known background checks results equals approximately $140,000,000. However, Plaintiffs' stipulation in the CFAC, as well as their ultimate demand of $35,000,000, make it clear that the $140,000,000 figure is not a reasonable estimate of Plaintiffs' claims.

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO REMAND**

unequivocally disavowed, in writing, any reading of the settlement communication that suggests any Plaintiff is seeking more than $75,000. *See* Pyle Decl. at ¶ 23; Disavowal Letter (Pyle Decl., Exh. A).

A settlement communication is only "relevant evidence of the amount in controversy if it appears to reflect a reasonable estimate of the plaintiff's claim." *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 840 (9th Cir. 2002) (citing *Chase v. Shop 'N Save Warehouse Foods, Inc.*, 110 F.3d 424, 428-30 (7th Cir. 1997)); *see also Kim v. Joseph (UK) Inc.*, No. CV 18-477-GW(EX), 2018 WL 1311453, at *4 (C.D. Cal., Mar. 12, 2018).

Here, Plaintiffs' October 15, 2020 settlement communication was not a reasonable estimate of their claims for several reasons. First, the pleadings stipulate that no Plaintiff is seeking more than $75,000. *See* Pyle Decl. at ¶ 19. Nothing in the settlement communication changes that fact.

Second, the settlement communication does not state that any Plaintiff is seeking more than $75,000. *See* Pyle Decl. at ¶ 20. Therefore, First cannot rely on this letter to meet its burden to establish that any Plaintiff meets the CAFA "mass action" threshold of $75,000 for an individual plaintiff.

Third, contrary to First's allegations, the settlement communication does not indicate that Plaintiffs may seek aggregate damages "in excess of $140 million in this action." *See* Pyle Decl. at ¶ 21; *cf.* Declaration of Ron Peters in Support of Defendants' Notice of Removal at ¶ 2; *Cohn*, 281 F.3d at 840 n.2. Instead, it proposes a settlement of $35 million, which is well under $75,000 per individual Plaintiff.

The $140 million figure in Plaintiffs' settlement communication was not a realistic estimate of the amount of Plaintiffs' claims in light of the cap Plaintiffs have placed on their damages. *See* Pyle Decl. at ¶ 22. Rather, it was a rhetorical statement of the result if the $10,000 statutory damages amount were applied to the raw number of background checks provided in discovery, which was included in the letter to support Plaintiffs' position concerning the reasonableness of their much lower settlement proposal. *See Leon v. Gordon Trucking, Inc.* (C.D. Cal. 2014) 76 F.Supp.3d 1055, 1071 (settlement communication did not establish that amount in controversy exceeded jurisdictional threshold in part because "the email suggests that [the plaintiff's] risk assessment reflects the high end of Gordon Trucking's liability rather than a reasonable estimate of its actual liability.").

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO REMAND**

Furthermore, courts generally disregard settlement communications where plaintiffs have disavowed them. *Cohn*, 281 F.3d at 840; *Graybill v. Khudaverdian*, No. SACV 15-01627-CJC(JCGx), 2015 WL 7295378, at \*4 (C.D. Cal. Nov. 17, 2015) (granting motion to remand where plaintiff disavowed settlement letter); *Vitale v. Celadon Trucking Services, Inc.*, No. CV16-8535 PSG (GJSX), 2017 WL 626356, at \*3 (C.D. Cal., Feb. 15, 2017) (damages estimate which plaintiffs disavowed was insufficient to show that the requisite amount had been met.); *Cadenas v. Union Pac. R.R.*, No. CV 10–5089–RJB, 2010 WL 890046, at \*2 (W.D. Wash. Mar. 9, 2010).

Here, Plaintiffs have disavowed their October 15, 2020 settlement communication insofar as First reads it as stating that any Plaintiff seeks more than $75,000. *See* Pyle Decl. at ¶ 23. In a letter to counsel for First dated November 25, 2020, Plaintiffs confirmed that the operative CFAC governs their claims and that the stipulation within the CFAC regarding the amount of their claims remains binding. *See* Disavowal Letter (Pyle Decl., Exh. A); *Rios*, 2019 WL 6715044, at \*2 (C.D. Cal. Dec. 10, 2019).

Plaintiffs' settlement communication is therefore irrelevant and should not be used to determine the amount in controversy.

### 3. The Court does not have jurisdiction over any Plaintiff whose claims do not exceed $75,000.

Finally, even if First were able to prove that one or more Plaintiffs has claims that exceed $75,000, which it cannot, the Court only has jurisdiction over those Plaintiffs whose claims exceed $75,000. CAFA provides that "jurisdiction shall exist only over those plaintiffs whose claims in a mass action satisfy the jurisdictional amount requirements under subsection (a)." 28 U.S.C. § 1332(d)(11)(B)(i); *see also* S. Rep. No. 109-14, at \*\*37 (2005) ("it is the Committee's intent that any claims that are included in the mass action that standing alone do not satisfy the jurisdictional amount requirements of Section 1332(a) (currently $75,000), would be remanded to state court"); *Abrego Abrego,* 443 F.3d at 687; *Friedman v. Bally Total Fitness Holding Corp.*, No. 2:12-CV-707-ODW(MRWX), 2012 WL 8453558, at \*2 (C.D. Cal., Sept. 25, 2012).

Here, Plaintiffs have stipulated in the operative CFAC that none of them seeks more than $75,000 in this action. *See* Pyle Decl. at ¶ 17. Accordingly, the Court has jurisdiction over none of them. 28 U.S.C § 1332(d)(11)(B)(i). In the unlikely event that First proves that any Plaintiff's claim exceeds

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO REMAND**

$75,000 notwithstanding Plaintiffs' stipulation, the Court must remand all remaining Plaintiffs whose claims do not exceed $75,000.[15] 28 U.S.C § 1332(d)(11)(B)(i).

**B.    First's Removal Is Untimely.**

There are several additional reasons that the Court need not reach, but which also mandate remand. The first is that First's removal, after 11 years of litigation in state court, is untimely, because First's deadline to remove under CAFA was in 2011 when discovery responses showed that some Plaintiffs had claims greater than $75,000. *See* Pyle Decl. at ¶ 24, 26. Even if First's window to remove under CAFA had not closed in 2011, First should have removed no later than July 2020, when data produced in discovery confirmed that some Plaintiffs hypothetically have damages that would exceed $75,000 if the Plaintiffs' decision to cap their claims at $75,000 were disregarded. *See* Pyle Decl. at ¶ 30.

A defendant must remove an action within 30 days of service of the initial pleading, or, "if the case stated by the initial pleading is not removable," the defendant must remove "within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b)(1), (3).

Accordingly, in a non-class action case such as this, a defendant seeking to establish federal jurisdiction under CAFA must remove within 30 days of first learning that the amount in controversy exceeds $5,000,000 in the aggregate and that at least one plaintiff seeks more than $75,000. 28 U.S.C. § 1332(d)(2).

Here, First knew as early as 2010 that Plaintiffs' claims in the aggregate exceeded $5 million, and since 2011 that at least seven Plaintiffs sought damages exceeding $75,000. *See* Pyle Decl. at ¶¶ 25-26. It also knew no later than June 2020 that many Plaintiffs would hypothetically have damages greater than $75,000, based on the number of background checks run on the Plaintiffs, if the Plaintiffs' cap were ignored. Therefore, there is no valid argument that First's removal is timely.

---

[15] For the reasons set forth above, "those Plaintiffs whose claims do not exceed $75,000" is an empty set and the Court should remand the entire case.

**13**

Indeed, First's choice to remove far outside the applicable 30-day time limit and just days before a hearing likely to result in an undesirable ruling, indicates that First is engaging in abusive gamesmanship. For these reasons, the Court should remand this action.

### 1. First could have ascertained from Plaintiffs' discovery responses that this action was removable as early as 2011.

Removal is untimely because First was on notice by 2011 that Plaintiffs' claims in the aggregate exceeded $5,000,000, and that at least seven Plaintiffs sought damages exceeding $75,000.

First has known that Plaintiffs' claims in the aggregate amounted to more than $5,000,000 since December 30, 2010, when Plaintiffs filed their Consolidated First Amended Complaint. *See* Pyle Decl. at ¶ 25. At that time, there were over 1000 Plaintiffs, each of whom sought a minimum of $10,000. Therefore, the aggregate amount of Plaintiffs' claims exceeded $5,000,000.

Furthermore, Plaintiffs served verified discovery responses in 2011 indicating that seven Plaintiffs had suffered more than $75,000 in damages. *See* Pyle Decl. at ¶ 26. Those Plaintiffs are: Susan Corona (claiming $157,516.24 in economic damages), *see* 2011 Discovery Responses for Susan Corona (Pyle Decl., Exh. E); Maria Molina (claiming $124,916 in economic damages), *see* 2011 Discovery Responses for Maria Molina (Pyle Decl., Exh. F); Joseph Pennington (claiming $156,010 in economic damages), *see* 2011 Discovery Responses for Joseph Pennington (Pyle Decl., Exh. G); Victor Hugo Santin Martinez (claiming $173,122.50 in economic damages), *see* 2011 Discovery Responses for Victor Hugo Santin Martinez (Pyle Decl., Exh. H); Lisa Marie Sykes (claiming $128,184.25 in economic damages), *see* 2011 Discovery Responses for Lisa Marie Sykes (Pyle Decl., Exh. I); Alton Wilkerson (claiming $106,972.90 in economic damages), *see* 2011 Discovery Responses for Wilkerson (Pyle Decl., Exh. J.); and Jessie Marie Winfield (claiming $107,196.51 in economic damages), *see* 2011 Discovery Responses for Jessie Marie Winfield (Pyle Decl., Exh. K).

At the time these discovery responses were served, Plaintiffs had not yet stipulated to limit their claims to $75,000. *See* Pyle Decl. at ¶ 27, Exh. L-N; *cf.* CFAC (Pyle Decl., Exh. B) (filed April 23, 2013) at ¶¶ 109-110, 114 (limiting damages for each Plaintiff to no more than $75,000). Therefore, Plaintiffs' discovery responses in 2011 opened the 30-day window in which First could remove the

action based on individual claims of over $75,000. *See* U.S.C. §§ 1446(c)(3)(A) (stating that responses to discovery may trigger removal); *see also, e.g.*, *Steiner v. Horizon Moving Systems Inc.*, 568 F.Supp.2d 1084, 1087 (C.D. Cal. 2008) ("Courts have found that a defendant may remove under the 'other paper' provision of section 1446(b) based on a plaintiff's discovery responses or deposition testimony."). Yet First did not remove at that time.

Having relinquished its opportunity to remove in 2011 when it "first [] ascertained that the case is one which is or has become removable," 28 U.S.C. § 1446(b)(1), (3), First allowed the removal window under CAFA to close. Any later removal attempt is untimely. *Id.*

> **2.    First's removal is also untimely because First could have ascertained no later than June 2020 that, if Plaintiffs' stipulation to cap their claims at $75,000 were disregarded, some Plaintiffs' claims would exceed $75,000.**

Even if removal were not untimely as of 2011, removal would still be untimely for a second reason. First's removal papers appear to contend that Plaintiffs' stipulation to limit their damages in the CFAC does not actually limit the amount in controversy to $75,000 per Plaintiff. The Court should reject that argument for the reasons set forth in Section IV.A, above.

However, even if the Court were to ignore  the $75,000 limitation, First should have removed this action no later than July 10, 2020. That is 30 days after HireRight provided discovery responses establishing that some Plaintiffs' damages would exceed $75,000 if there were no cap on them.

On June 10, 2020, HireRight provided verified discovery responses showing that 13,877 individual background checks were run on the Plaintiffs in this case. *See* Pyle Decl. at ¶ 30. ICRAA provides for a non-discretionary statutory award of $10,000 for each background check run in violation of the statute.[16] HireRight's data confirms that First ran more than ten background checks on some Plaintiffs. Pyle Decl. at ¶ 30. Accordingly, if First truly believed that Plaintiffs' stipulations in the CFAC did not limit the amount in controversy, as it now suddenly appears to argue seven years after the CFAC was filed, it was required to have removed by July 10, 2020, which was 30 days after the discovery

---

[16] At the time that those discovery responses were served, the Superior Court had already ruled that damages could amount to $10,000 per background check. *See* Feb. 2020 Order (Pyle Decl., Exh. C); *see also* Cal. Civ. Code § 1786.50(a)(1).

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO REMAND**

responses revealed thousands of background checks and made plain that Plaintiffs' damages could theoretically total $138,770,000 or more in the aggregate.[17]

First's removal on November 10, 2020 was therefore untimely under any scenario.

### 3.    First's untimely removal is an act of abusive gamesmanship.

By failing to remove within, or even close to within, CAFA's time limits, and instead removing without justification on the eve of a hearing First wished to avoid, First has engaged in the sort of "abusive gamesmanship" that this Court has recognized to be of particular concern in CAFA cases. *See Roth v. CHA Hollywood Med. Ctr., L.P.*, 720 F.3d 1121, 1126 (9th Cir. 2013); *Rodriguez v. Swissport USA, Inc.*, No. CV 15-3951-GW(PLAX), 2015 WL 4977187, at *2 (C.D. Cal., Aug. 20, 2015).

First chose to ligate this case in state court for 11 years before attempting to remove it on grounds that are invalid both because of the $75,000 limit on Plaintiffs claims and because removal is time-barred. *See* Pyle Decl. at ¶¶ 6-18. First filed its untimely notice of removal only when faced with an adverse tentative ruling. *See* Pyle Decl. at ¶ 18. If adopted, that tentative ruling would have resolved five critical issues in favor of Plaintiffs and against First. *See* JCCP Tentative Ruling of October 2, 2020 (Pyle Decl., Exh. D).

This Court has indicated that "a defendant should not be able to ignore pleadings or other documents from which removability may be ascertained and seek removal only when it becomes strategically advantageous for it to do so." *Rodriguez v. Swissport USA, Inc.*, No. CV 15-3951-GW (PLAX)), 2015 WL 4977187, at *2 (C.D. Cal., Aug. 20, 2015). Plaintiffs respectfully request that the Court apply that maxim here.

### C.    This case is not a "mass action" under CAFA.

While it need not reach the issue, the Court should also grant remand because this case is not a "mass action" under CAFA. CAFA provides for federal jurisdiction only over certain types of mass actions. See 28 U.S.C § 1332(d)(11)(A), (B). The Ninth Circuit has described CAFA's "mass action" provision as "fairly narrow." *Corber v. Xanodyne Pharmaceuticals, Inc.* 771 F.3d 1218, 1222 (9th Cir. 2014) (quoting *Tanoh v. Dow Chemical Co.* 561 F.3d 945, 953 (9th Cir. 2009)).

---

[17] This mathematical truism is the basis for Plaintiffs' counsel's calculation in the settlement communication.

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO REMAND

Specifically, 28 U.S.C section 1332(d)(11)(B)(ii) provides in pertinent part that the term "mass action" does not include any civil action in which:

(1) all of the claims in the action arise from an event or occurrence in the State in which the action was filed, and that allegedly resulted in injuries in that State or in States contiguous to that State; [or]

(2) the claims are joined upon motion of a defendant.

Here, all of the claims in the action arise from events in California causing injuries in California: illegal background checks on California residents that violated their rights under a California consumer protection statute. Furthermore, the underlying cases have all been joined upon motions filed by Defendants. Therefore, this case is not a "mass action" under CAFA, and the Court must remand.

### 1.    The claims in the action arise from an event in California and resulted in injuries in California

Plaintiffs' claims are not a "mass action" under CAFA because they arise from an event in California and resulted in injuries in California. 28 U.S.C § 1332(d)(11)(B)(ii)(I).

First's Notice of Removal alleges that Plaintiffs are residents and citizens of California. Notice of Removal, ¶ 23. Additionally, Plaintiffs were all employed or sought employment in California at the time of the illegal background checks. *See* Pyle Decl. at ¶ 32. They all allege that First sent them disclosure forms that failed to provide the notice required by ICRAA.

First mailed those inadequate disclosure forms to Plaintiffs at their home addresses. *See* Pyle Decl. at ¶ 33; Declaration of Gary Catapano ("Catapano Decl.) (Pyle Decl., Exh. O) at 164:8-25. Each Plaintiff had a home address in California. *See* Pyle Decl. at ¶ 32. Therefore, Plaintiffs' claims arise from events that took place in California.

Furthermore, each Plaintiff lived in California at the time that First had HireRight conduct the illegal background checks. *See* Pyle Decl. at ¶ 32. Therefore, the violations of law resulted in injuries to Plaintiffs in California.

### 2.    The claims were joined upon motions filed by Defendants First and HireRight.

Plaintiffs' claims are also not a "mass action" under CAFA because those claims were joined upon motions filed by Defendants. 28 U.S.C § 1332(d)(11)(B)(ii)(II).

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO REMAND**

CAFA "makes clear that if it were a defendant who petitioned to add the cases…the cases would not constitute a mass action." *Briggs v. Merck Sharp & Dohme*, 796 F.3d 1038, 1049 (9th Cir. 2015). "Congress anticipated, in other words, that defendants…might attempt to consolidate several smaller state court actions into one 'mass action,' and specifically directed that such a consolidated action was *not* a mass action eligible for removal under CAFA." *Tanoh*, 561 F.3d at 953.

Here, beginning in October 2009, Plaintiffs filed 24 separate cases, each with fewer than 100 Plaintiffs, in four different California counties. *See* Pyle Decl. at ¶ 34. Beginning in April 2010, Defendants filed a series of petitions to coordinate these cases, which were eventually granted. *See* Pyle Decl. at ¶¶ 35-42; Coordination Correspondence (Pyle Decl., Exh. Q, R); Defendants' April 2010 Petition to Coordinate (Pyle Decl., Exh. P); Plaintiffs' April 2010 Opposition to Coordination (Pyle Decl., Exh. S); Defendants' May 2010 Petition to Coordinate (Pyle Decl., Exh. T); Plaintiffs' May 2010 Opposition to Coordination (Pyle Decl., Exh. U); July 2010 Coordination Order (Pyle Decl., Exh. V); October 2010 Coordination Petition (Pyle Decl., Exh. W); November 2010 Hearing Transcript (Pyle Decl., Exh. Z); January 2012 Coordination Petition (Pyle Decl., Exh. AA).

Plaintiffs' claims were thus joined upon Defendants' motions. This action is therefore not a "mass action" under CAFA. *See* 28 U.S.C § 1332(d)(11)(B)(ii)(II).

**D.   CAFA Jurisdiction Also Fails Because the Local Controversy Exception Applies**

CAFA jurisdiction is also unavailable in this action because the local controversy exception applies. The statute provides that a district court shall decline CAFA jurisdiction over a class action (or in this case, "mass action") in which:

(I) greater than two-thirds of the members of all proposed plaintiff classes in the aggregate are citizens of the State in which the action was originally filed

(II) at least 1 defendant is a defendant—

(aa) from whom significant relief is sought by members of the plaintiff class;

(bb) whose alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class; and

(cc) who is a citizen of the State in which the action was originally filed; and

**18**

(III) principal injuries resulting from the alleged conduct or any related conduct of each defendant were incurred in the State in which the action was originally filed; and

(ii) during the 3-year period preceding the filing of that class action, no other class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons.

28 U.S.C. § 1332(d)(4)(A).

If a case satisfies these elements, it must be remanded to state court. *Mondragon v. Capital One Auto Finance*, 736 F.3d 880, 884 (9th Cir. 2013). Plaintiffs bear the burden of showing by a preponderance of the evidence that the local controversy exception applies. *Benko v. Quality Loan Service Corp.*, 789 F.3d 1111, 1116 (9th Cir. 2015). However, the Court may make reasonable inferences from facts in evidence in ruling on Plaintiffs' motion. *Mondragon*, 736 F.3d at 886.

Every element of the local controversy exception to CAFA is satisfied here.

### 1.    More than two-thirds of all Plaintiffs are California citizens.

All Plaintiffs are citizens of California. Notice of Removal, ¶ 23; Pyle Decl. at ¶ 43. A party with the burden of proving citizenship may rely on the presumption of continuing domicile, which provides that, once established, a person's state of domicile continues unless rebutted with sufficient evidence of change. *Mondragon*, 736 F.3d at 885.

Furthermore, if a case is not subject to federal jurisdiction as stated by an initial pleading, citizenship is determined as of the date of service of any other paper indicating the existence of federal jurisdiction. 28 U.S.C. § 1332(d)(7). First claims the amount in controversy was first met by Plaintiffs' settlement letter of October 15, 2020. Defendants' Notice of Removal at ¶ 12.

Here, as of October 15, 2020, more than two-thirds of Plaintiffs were domiciled in California. Pyle Decl. at ¶ 44. Accordingly, more than two-thirds of Plaintiffs are citizens of California. *See Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001) ("The natural person's state of citizenship is then determined by her state of domicile, not her state of residence.").

//

//

//

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO REMAND**

**2.    HireRight, Inc. is a California citizen and a defendant from which significant relief is sought within the terms of the local controversy exception.**

**a.    Plaintiffs seek significant relief from HireRight Inc. and HireRight Inc.'s alleged conduct forms a significant basis for the Plaintiffs' claims.**

The CFAC alleges a total of nine causes of action. *See* Pyle Decl. at ¶ 45. Four of those causes of action are alleged solely against HireRight and based on its actions as a background check agency, and one is alleged against both HireRight and First.  The CFAC seeks relief from both HireRight and First in an amount not to exceed $75,000. The Superior Court has determined that each defendant is separately liable for its violations of ICRAA. *See* Pyle Decl. at ¶ 45; Feb. 2020 Order (Pyle Decl., Exh. C).

Additionally, the CFAC contends that HireRight violated Plaintiffs' rights under ICRAA by failing to obtain certifications from First that it had made the required disclosures. These violations, along with violations by First, form the entire basis for Plaintiffs' claims. *See* Pyle Decl. at ¶ 46.

The CFAC thus seeks significant relief against HireRight, whose actions are a significant basis for the Plaintiffs' claims, satisfying subsections (aa) and (bb) of the exception. *See Coleman v. Estes Exp. Lines, Inc.*, 631 F.3d 1010, 1019-20 (9th Cir. 2011).

**b.    HireRight Inc. is a citizen of California.**

Section 1332(c)(1) provides that, "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." The Supreme Court has explained that "the phrase 'principal place of business' in § 1332(c)(1) refers to the place where the corporation's high level officers direct, control, and coordinate the corporation's activities, *i.e.*, its "nerve center," which will typically be found at its corporate headquarters." *Hertz Corp. v. Friend*, 559 U.S. 77, 78 (2010) (from the syllabus, referring to pages 1187 through 1195 of the opinion).

HireRight, Inc. maintains its corporate headquarters at 3349 Michelson Drive, Suite 150 in Irvine, California 92612. *See* Pyle Decl. at ¶ 47; HireRight Website—Headquarters ("HireRight HQ") (Pyle Decl., Exh. X). Accordingly, it is a citizen of California, the state in which this action was originally filed. *See* 28 U.S.C. § 1332(d)(4)(A)(i)(I)(cc).

//

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO REMAND**

**3.    The principal injuries resulting from Defendants' misconduct were incurred in California**

As discussed above, the claims in this action arise from background checks on employees living and working, or seeking work, in California, and resulted in ICRAA violations in California. Each Plaintiff lived in California at the time that First had HireRight conduct the illegal background checks, and the checks were illegal under California law. Therefore, the violations of ICRAA were injuries to the Plaintiffs in California.

**4.    No other class action has been filed against Defendants asserting similar factual allegations in the three years preceding this action**

The final prong of the local controversy exception requires that "during the 3-year period preceding the filing of that class action, no other class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons." 28 U.S.C. § 1332(d)(4)(A)(ii). Here, one class action—*Hunter, et al. v. First Transit, Inc.*, 1:09-cv-06178 (N.D. Ill. 2009)—was filed against Defendant First Transit, Inc. ("First Transit") roughly a week before the first complaint was filed in this action. *See* Pyle Decl. at ¶ 48. However, *Hunter* does not assert factual allegations that are the same or similar to the allegations in this case.

The plaintiffs in *Hunter* sought relief on behalf only "of all persons whose rights under the Fair Credit Report Act ("FCRA") were violated when First Transit, Inc. terminated their employment or denied them employment in reliance on information contained in "consumer reports" without first providing them with: (a) a pre-adverse action disclosure which includes a copy of the employee's consumer report obtained from the consumer reporting agency and a description in writing of the employee's rights under the FCRA; and (b) a pre-adverse action opportunity to dispute the accuracy of the reported information." *Hunter, et al. v. First Transit, Inc.*, 1:09-cv-06178 (N.D. Ill. 2009), Dkt. 1 (Pyle Decl., Exh. Y) at 1.

Although ICRAA contains similar provisions also governing "pre-adverse action," *see* Civ. Code § 1786.53(b)(4), these provisions are not the basis for any cause of action in this case.

*Hunter* and this action thus do not involve common questions of law and fact. *See Bridewell-Sledge v. Blue Cross of California*, 798 F.3d 923 (9th Cir. 2015) ("the purpose of the fourth prong of the

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO REMAND**

local controversy exception and an overall purpose of CAFA is to ensure that similar, overlapping class actions do not proceed before different state courts in an uncoordinated, redundant fashion"). They therefore do not assert the same or similar factual allegations.

All of the requirements of the local controversy exception are therefore satisfied. Plaintiffs respectfully submit that the Court must decline CAFA jurisdiction for this reason as well as for the other reasons discussed above.

**V.    CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court grant their motion to remand this action to state court.

Dated: December 9, 2020                                    HUNTER PYLE LAW

By: _____
     Hunter Pyle

*Attorneys for Plaintiffs*

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO REMAND**