**REMAND / JS-6**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 20-10286-GW-SKx | Date | January 7, 2021 |
|---|---|---|---|
| Title | *Jesus Aguinaga, et al. v. First Student, Inc., et al.* | | |

| Present: The Honorable | GEORGE H. WU, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Javier Gonzalez | Terri A. Hourigan | |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Todd F. Jackson | Benjamin A. Emmert |
| Randolph H. Pyle | Rod M. Fliegel |

**PROCEEDINGS:** TELEPHONIC HEARING ON PLAINTIFFS' MOTION TO REMAND [10]

Court hears oral argument. The Tentative circulated and attached hereto, is adopted as the Court's Final Ruling. The Court GRANTS the motion to remand.

: 14

Initials of Preparer  JG

<u>*Jesus Aguinaga et al v. First Student Inc. et al*</u>; Case No. 2:20-cv-10286-GW-(SKx)
Tentative ruling on Motion to Remand

## I. <u>Background</u>

Between 2009 and 2011, 24 separate plaintiffs filed 24 separate non-class action cases in state court against Defendants First Student, Inc., First Transit, Inc., HireRight, Inc., and HireRight Solutions, Inc. *See* Declaration of Hunter Pyle in Support of Plaintiffs' Motion to Remand ("Pyle Decl."), Docket No. 10-2, ¶ 6; Notice of Removal, Docket No. 1, at 3-6 (listing the 24 cases). Each case named fewer than 100 plaintiffs, and the 24 cases named a total of approximately 1,397 Plaintiffs. *See* Pyle Decl. ¶¶ 6-7. There are approximately 1,295 active Plaintiffs at this time, as 102 Plaintiffs were dismissed in 2013. *See id.* ¶ 7. In 2010 and 2012, the California Judicial Council coordinated the cases in the Los Angeles County Superior Court, under the title *First Student Inc. Cases*, JCCP 4624. *See id.* ¶ 10.[1] On April 23, 2013, Plaintiffs filed the operative Consolidated Fourth Amended Complaint. *See* Consolidated Fourth Amended Complaint ("CFAC"), Pyle Decl. Exh. B.

Plaintiffs sued Defendants for violations of California's Investigative Consumer Reporting Agencies Act ("ICRAA") (Cal. Civ. Code § 1786 *et seq.*) and California's Unfair Competition Law (Cal. Bus. & Prof. Code § 17200 *et seq.*). *See generally id.* Plaintiffs are current or former employees of Defendants First Student, Inc. and First Transit, Inc. *See id.* ¶ 4. Defendant First Student, Inc. is a private contractor providing bus transportation services for students in various California school districts, and Defendant First Transit, Inc. is a private contractor providing bus transportation services throughout California. *See id.* ¶¶ 15-16. Plaintiffs allege that Defendants First Student, Inc. and First Transit, Inc. (collectively, "First") requested that Defendants HireRight, Inc. and HireRight Solutions, Inc. (collectively, "HireRight," a consumer reporting agency) conduct background checks on Plaintiffs, and violated the ICRAA by not giving Plaintiffs proper notice or obtaining written authorization to run the background checks. *See id.* ¶¶ 2, 6. HireRight also purportedly violated the ICRAA by preparing the investigative consumer reports on Plaintiffs without receiving the required

---

[1] *See also* July 15, 2010 Order Granting Petition for Coordination, Docket No. 1-5, Exh. 16 to Compendium of Documents; October 12, 2010 Order Granting Petition for Coordination of Add-On Lawsuits, Docket No. 1-8, Exh. 23 to Compendium of Documents; February 6, 2012 Order Granting Petition for Coordination of Add-On Lawsuits, Docket No. 1-10, Exh. 34 to Compendium of Documents.

1

certifications from First regarding each Plaintiff. *See id.* ¶¶ 3, 7. Plaintiffs' complaint states that Defendants "are liable to each Plaintiff for a minimum of $10,000 per Defendant for each violation, as well as attorneys' fees and costs, but in an amount not to exceed $75,000 including actual damages, statutory damages, punitive damages, interest, pro rata shares of attorneys' fees, pro rata shares of costs, and any form of equitable relief." *See id.* ¶ 8. Plaintiffs expressly stipulate in the complaint "that no Plaintiff's claim for relief shall exceed $75,000." *See id.* ¶ 109.

This action has been litigated in state court for 11 years, during which the parties have exchanged individualized discovery on all Plaintiffs. *See* Joint Rule 26(f) Report, Docket No. 13, at 2. Defendants have filed multiple dispositive and non-dispositive motions, which have gone through various appeals. *See id.* In 2014, the trial court granted Defendants' motion for summary judgment. *See* Docket No. 1-12, Exh. 56 to Compendium of Documents. The California Court of Appeal reversed, and in 2018 the California Supreme Court affirmed the Court of Appeal's decision and remanded the action back to the Los Angeles County Superior Court. *See Connor v. First Student, Inc.*, 5 Cal.5th 1026 (2018).

The parties continued to litigate the case in 2019 and 2020. *See* Joint Rule 26(f) Report at 2. On October 2, 2020, the Superior Court issued a tentative ruling in Plaintiffs' favor on five issues the parties had briefed. *See* Tentative Ruling on Briefing Re: Five Issues, Pyle Decl. Exh. D. Defendants then requested a continuance of the hearing on those issues. *See* Pyle Decl. ¶ 16. On November 10, 2020, before the rescheduled hearing, First removed the action to federal court, asserting that this Court has jurisdiction pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d). *See* Notice of Removal at 3; Pyle Decl. ¶ 18. HireRight has not joined First's removal.[2] *See generally* Notice of Removal; Docket.

Before the Court now is Plaintiffs' motion to remand this action to state court ("Motion"), filed on December 9, 2020. *See* Docket No. 10-1. First filed an opposition brief ("Opp'n"), *see* Docket No. 11, and Plaintiffs filed a reply brief ("Reply"). *See* Docket No. 12.

## II. **Legal Standard**

Federal courts operate under the presumption that they do not have jurisdiction over state-law causes of action. *See Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994).

---

[2] Plaintiffs' counsel and HireRight reached a settlement agreement on November 6, 2020, which provides that all claims against HireRight will be stayed during the period required to effectuate the settlement and that any rulings on the merits of Plaintiffs' claims will not bind HireRight. *See* Joint Rule 26(f) Report at 5-6.

2

The burden of establishing federal jurisdiction for purposes of removal is on the party seeking removal. *See Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004). "[U]nder CAFA the burden of establishing removal jurisdiction remains, as before, on the proponent of federal jurisdiction." *Abrego Abrego v. The Dow Chemical Co.*, 443 F.3d 676, 685 (9th Cir. 2006).

CAFA provides that district courts have original jurisdiction over any class action in which: (1) the total amount in controversy exceeds $5,000,000, (2) any plaintiff class member is a citizen of a state different from any defendant, (3) the primary defendants are not states, state officials, or other government entities against whom the district court may be foreclosed from ordering relief, and (4) the number of plaintiffs in the class is at least 100. *See* 28 U.S.C. §§ 1332(d)(2), (d)(5). However, there is another provision of CAFA which seems to differentiate between situations where a case is directly filed in federal court with the plaintiff alleging those jurisdictional requirements (*see, e.g., Aversano v. Santander Bank, N.A.*, 828 F. App'x 109 (3rd Cir. 2020)), and cases which consist of "mass actions" which are originally filed in state court and are removed to federal court by the defendant. Under CAFA, a "mass action" is "any civil action (except a civil action within the scope of section 1711(2)) in which monetary relief claims of 100 or more persons are proposed to be tried jointly on the ground that the plaintiffs' claims involve common questions of law or fact, except that jurisdiction shall exist only over those plaintiffs whose claims in a mass action satisfy the jurisdictional amount requirements under [28 U.S.C. § 1332(a)]." *See* 28 U.S.C. § 1332(d)(11)(B)(i). The jurisdictional amount referenced in § 1332(a) is "exceeds the sum or value of $75,000." 28 U.S.C. § 1332(d)(11)(A) states that "[f]or purposes of this subsection and section 1453, a mass action shall be deemed to be a class action removable under paragraphs (2) through (10) if it otherwise meets the provisions of those paragraphs." Thus, it has been held by certain courts of appeal (including the Ninth Circuit) that where a defendant seeks to remove a mass action from state court to federal court, at least one plaintiff class member's claim must exceed $75,000. *See, e.g., Robertson v. Exxon Mobil Corp.*, 814 F.3d 236, 239 (5th Cir. 2015) ("Because the party seeking removal bears the burden of establishing federal jurisdiction, we have held that a putative mass action removed under CAFA must be remanded if the defendants cannot establish that (1) the aggregate amount in controversy exceeds $5 million and (2) at least one plaintiff's claim satisfies the $75,000 individual amount in controversy."); *Lowery v. Ala. Power Co.*, 483 F.3d 1184, 1203-07 (11th Cir. 2007); *Abrego v.*

*Dow Chem. Co.*, 443 F.3d 676, 689 (9th Cir. 2006) ("Dow, however, has not established that even one plaintiff satisfies the $75,000 jurisdictional amount requirement of § 1332(a), applicable to mass actions by virtue of § 1332(d)(11)(B)(i). Although, as noted, we do not decide whether this case could go forward if only one or a few plaintiffs are within the category over whom 'jurisdiction shall exist,' we do conclude − as should be obvious − that the case cannot go forward unless there is at least one plaintiff whose claims can remain in federal court.").

When measuring the amount in controversy, a court must assume that the allegations of the complaint are true and that a jury will return a verdict for the plaintiff on all claims made in the complaint. *See Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002). The amount in controversy requirement excludes only "interest and costs," so attorneys' fees can be included in the calculation. *See Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 700 (9th Cir. 2007). "The ultimate inquiry is what amount is put 'in controversy' by the plaintiff's complaint, not what a defendant will actually owe." *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1205 (E.D. Cal. 2008); *see also Rippee v. Boston Market Corp.*, 408 F. Supp. 2d 982, 986 (S.D. Cal. 2005). A court may consider the contents of the removal petition and summary-judgment-type evidence relevant to the amount in controversy at the time of the removal. *See Korn*, 536 F. Supp. 2d at 1205. "Under this system, a defendant cannot establish removal jurisdiction by mere speculation and conjecture, with unreasonable assumptions." *See Ibarra v. Manheim Inv., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015).

### III. Discussion

In order to remove this non-class action case to federal court as a mass action under CAFA, First must show, inter alia, that the total amount in controversy exceeds $5,000,000, and that at least one individual plaintiff seeks more than $75,000. *See Abrego*, 443 F.3d at 689. Plaintiffs argue that First cannot prove the $75,000 amount in controversy requirement is met for any Plaintiff. *See* Motion at 8.

Plaintiffs stipulated to a damages cap of $75,000 per Plaintiff in the operative complaint, which states: "Plaintiffs hereby stipulate that no Plaintiff's claim for relief shall exceed $75,000 including actual damages, statutory damages, punitive damages, interest, pro rata shares of attorneys' fees, pro rata shares of costs, and any form of equitable relief." *See* CFAC ¶ 109. Plaintiffs were entitled to such a stipulation, as "federal courts permit individual plaintiffs, who

4

are the masters of their complaints, to avoid removal to federal court, and to obtain a remand to state court, by stipulating to amounts at issue that fall below the federal jurisdictional requirement." *See Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 595 (2013) (citing *St. Paul Mercury Indemnity Co. v. Red Cab Co.,* 303 U.S. 283, 294 (1938) ("If [a plaintiff] does not desire to try his case in the federal court he may resort to the expedient of suing for less than the jurisdictional amount, and though he would be justly entitled to more, the defendant cannot remove.").

In its Notice of Removal, First noted that the action originally was not removable in part because "Plaintiffs each represented that they were not seeking more than $75,000 per individual in damages." *See* Notice of Removal ¶ 11; *see also* CFAC ¶¶ 8, 109. However, on October 15, 2020, Plaintiffs' counsel sent a letter stating that Plaintiffs may seek in excess of $140,000,000 in this action. *See* Notice of Removal ¶ 12. First reasoned that, because there were approximately 1,296 Plaintiffs in the action and given the asserted possible recovery of $140,000,000, each Plaintiff potentially could recover $108,025, which exceeded $75,000. *See id.* Accordingly, First stated that "Plaintiffs now admit the amount in controversy has been met." *See id.* First did not file the letter with its Notice of Removal or describe the letter's context.

Plaintiffs clarify in their motion to remand that the letter was a settlement communication they sent to First on October 15, 2020. *See* Motion at 10. Plaintiffs argue that contrary to First's claims, the settlement communication did not indicate Plaintiffs may seek aggregate damages in excess of $140,000,000 in this action. *See id.* at 11; Pyle Decl. ¶¶ 20-21. Instead, the settlement communication proposed "to resolve the claims of 876 Plaintiffs for a total of $35,000,000, or approximately $39,900 per Plaintiff if the total were divided evenly." *See* Motion at 10. "In doing so, Plaintiffs compared the proposed amount to a much higher hypothetical aggregate exposure First would face if found liable and required to pay statutory damages of $10,000 for each background check shown in the data. That is, Plaintiffs pointed out the mathematical fact that multiplying $10,000 by the number of known background checks results in approximately $140,000,000." *See id.*

Plaintiffs argue that the settlement communication "is not relevant to the amount in controversy because it does not allege that any individual Plaintiff is seeking more than $75,000," and does not state or imply that Plaintiffs intend to deviate from the operative 2013 complaint and stipulation to seek no more than $75,000 per Plaintiff. *See id.*; Pyle Decl. ¶ 20.

5

Further, in a November 25, 2020 letter to First's counsel, Plaintiffs' counsel "unequivocally disavowed, in writing, any reading of the settlement communication that suggests any Plaintiff is seeking more than $75,000." *See* Motion at 10-11; Pyle Decl. ¶ 23, Exh. A ("Disavowal Letter"). The letter stated that Plaintiffs had been clear since at least April 23, 2013 that none of them sought damages in excess of $75,000 and further stated:

> Plaintiffs' October 15, 2020 letter proposing to settle claims against First for $35,000,000 does not change that fact. Insofar as you read settlement puffery in a letter sent under settlement privilege differently, we unequivocally disavow that reading. The amount sought in the litigation is, and has been since Plaintiffs filed their Consolidated Fourth Amended Complaint ("CFAC"), limited to a maximum of $75,000 per Plaintiff.

*See* Disavowal Letter at 1.

The Court is inclined to agree with Plaintiffs that the $140,000,000 number in the October 15, 2020 settlement communication is not a reasonable estimate of Plaintiffs' claims and therefore does not establish that any Plaintiff seeks more than $75,000. *See* Motion at 11; *see also Cohn v. Petsmart, Inc.*, 281 F.3d 837, 840 (9th Cir. 2002) ("A settlement letter is relevant evidence of the amount in controversy if it appears to reflect a reasonable estimate of the plaintiff's claim."). Plaintiffs contend the figure "was a rhetorical statement of the result if the $10,000 statutory damages amount were applied to the raw number of background checks provided in discovery, which was included in the letter to support Plaintiffs' position concerning the reasonableness of their much lower settlement proposal." *See* Motion at 11. This is not a situation in which Plaintiffs have consistently maintained that they seek $140,000,000 in the aggregate or that any Plaintiff seeks more than $75,000. *See, e.g., Cohn*, 281 F.3d at 840 (holding that the amount demanded in settlement letter was sufficient to establish the amount in controversy where plaintiff did not argue that the demand was not an honest assessment of damages and made no attempt to disavow his letter or offer contrary evidence, but rather made consistent statements in line with the demanded amount). Plaintiffs did not even make a demand for $140,000,000 or any other figure that would exceed a potential recovery of $75,000 per Plaintiff; they proposed a settlement of $35,000,000 for 876 Plaintiffs. *See* Motion at 10; Pyle Decl. ¶ 21.

Once First removed the case, Plaintiffs disavowed any reading of the settlement communication as demanding more than $75,000 per Plaintiff and affirmed the stipulated

6

damages cap. *See* Disavowal Letter. The Court would find this disavowal of First's interpretation sufficient to grant the motion to remand, as First has not provided other evidence that the amount in controversy per individual Plaintiff exceeds $75,000. *See Graybill v. Khudaverdian*, No. SACV 15-01627-CJC (JCGx), 2015 WL 7295378, at *4 (C.D. Cal. Nov. 17, 2015) (granting motion to remand where plaintiff disavowed settlement demand and affirmed that he sought the damages amount stated in the complaint, which fell below the requisite amount in controversy); *Vitale v. Celadon Trucking Servs., Inc.*, No. CV16-8535 PSG (GJSx), 2017 WL 626356, at *4 (C.D. Cal. Feb. 15, 2017) (finding that a mediation brief damages estimate did not represent a reasonable estimate in light of plaintiff's disavowal, and remanding the case because defendant presented no additional evidence that the damages exceeded the jurisdictional threshold); *Leon v. Gordon Trucking, Inc.*, 76 F. Supp. 3d 1055, 1071 (C.D. Cal. Dec. 31, 2014) (noting that courts "have held that where a plaintiff takes steps to disavow a damages estimate, the estimate, standing alone, is insufficient to show that the requisite amount is at issue" and finding a damages estimate insufficient to carry defendant's burden in part because plaintiff disavowed its accuracy).

Plaintiffs expressly stipulated to a damages cap of $75,000 per Plaintiff in the operative complaint, and have not amended the stipulation. *See* CFAC ¶ 109; Disavowal Letter at 1. Plaintiffs acknowledge that they are bound by this stipulation. *See* Pyle Decl. ¶ 19; *see also Knowles*, 568 U.S. at 595 (noting that federal courts permit individual plaintiffs to avoid removal by stipulating to amounts at issue that fall below the federal jurisdictional requirement, but that "the key characteristic about those stipulations is that they are legally binding on all plaintiffs"). Despite First's arguments to the contrary, it therefore is not reasonable for First to rely on the $140,000,000 figure in calculating the amount in controversy, or to assume that any Plaintiff now seeks more than $75,000. *See* Opp'n at 8-9. The Court also is unpersuaded by First's argument that Plaintiffs stated in their motion to remand "that at least some Plaintiffs may seek damages in excess of [$75,000]." *See* Opp'n at 9. The sentence First cites states that "First's removal is also untimely because First could have determined six months ago that some Plaintiffs would have potential damages of more than $75,000 *if the $75,000 cap on their claims were ignored.*" *See* Motion at 7 (emphasis added). The footnote to that sentence states: "As will be noted throughout this brief, at no time since the stipulated $75,000 cap was pled in the CFAC has the cap been altered, removed, or lifted. While Plaintiffs argue, in an abundance of caution,

7

the alternative reasons for why remand is required, the cap remains and that cap is a sufficient basis, alone, for remand." *See id.*, n. 9.  As such, Plaintiffs have unequivocally stated that they seek only $75,000 per Plaintiff, and have not "hedg[ed] that some individual may seek more while others may not."  *See* Opp'n at 9; Reply at 3 ("Plaintiffs have unequivocally affirmed and reaffirmed that the cap remains in place").

It appears the Court does not have jurisdiction over this action based on the amount in controversy per individual Plaintiff, and the Court therefore need not address Plaintiffs' alternative arguments for remand.  Plaintiffs note that the parties have not filed the October 15, 2020 settlement communication, but that Plaintiffs will do so if the Court wishes to review it.  *See* Motion at 10, n.13.  While the Court is inclined to grant the motion to remand, the Court first requests that Plaintiffs provide a copy of the settlement communication and would permit Plaintiffs to file it under seal.

### IV.  Conclusion

Based on the foregoing discussion, the Court would **GRANT** the motion to remand upon reviewing the October 15, 2020 settlement communication.